O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
phone: (212) 326-2000
fax: (212) 326-2061
Jeffrey I. Kohn (JK-3219)
Jessica Kastin (JK-2288)
Raquel Millman (RM-2133)

Of Counsel:
        Robert A. Siegel

Attorneys for Plaintiffs
Atlas Air Worldwide Holdings, Inc. and
Atlas Air, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATLAS AIR WORLDWIDE HOLDINGS, INC. and
ATLAS AIR, INC.,

     *Plaintiffs,*

-against-

AIR LINE PILOTS ASSOCIATION and ATLAS
AIR, INC. MASTER EXECUTIVE COUNCIL,
     *Defendants.*

No. 05 CV 8237 (KMK)

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Atlas Air WorldWide Holdings, Inc. ("AAWH") and Atlas Air, Inc. ("Atlas")

(collectively, "Plaintiffs") hereby allege for their Complaint as follows:

## INTRODUCTION

1.  This is an action under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, to

enjoin the above-captioned Defendants, the Airline Pilots Association International ("ALPA")

and the ALPA Master Executive Council for Atlas ("Atlas MEC") (collectively, "Defendants")
and all persons and organizations acting in concert therewith, from engaging in any strike,
sympathy strike, slowdown, work stoppages, withholding of services in whole or in part, other
concerted refusal to perform normal employment duties, other cessation of work or disturbances
economic or otherwise, or any other form of self-help unless and until the Defendants have
exhausted the dispute resolution procedures set forth in the RLA, including submitting this
dispute to binding arbitration before the System Board of Adjustment. Plaintiffs also seek a
judicial declaration that such activity would violate the RLA as well as damages.

2.    ALPA has called a strike at Polar Air Cargo, Inc. ("Polar") that began at or about
2:15 a.m. on September 16, 2005. In support of its dispute at Polar, ALPA members, as directed
by ALPA and the Atlas MEC, have instructed Atlas crewmembers not to report for work in
sympathy with the striking Polar crewmembers. This sympathy strike violates a No Strike
Agreement executed between Atlas and the Atlas MEC. Moreover, these sympathy strike
activities threaten to wreak havoc on Atlas and its customers, and to seriously interfere with and
cause damage to interstate commerce.

3.    Through this action, Plaintiffs seek to protect their business operations and their
customers by asking the Court to issue a declaratory judgment that the Defendants' activity is
unlawful as well as a temporary restraining order and preliminary injunction prohibiting the
Defendants and anyone acting in concert with them, from engaging in a strike, sympathy strike,
slowdown, withholding of services in whole or in part, other concerted refusal to perform normal
employment duties, other cessation of work or disturbances economic or otherwise, including the
refusal to report for duty, or any other form of self-help prior to exhausting the dispute resolution
procedures mandated by the RLA. Absent an order from this Court enjoining such activity and

2

declaring it unlawful, Plaintiffs could suffer potentially devastating harm.

4.     This Court is authorized by the RLA to enjoin self-help, including, but not limited to, sympathy strike activity.  An actual controversy has arisen and now exists between Plaintiffs and Defendants with respect to this issue.

## JURISDICTION

5.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 over this action pursuant to the RLA, 45 U.S.C. §§ 151-188, and federal jurisdiction under 28 U.S.C. § 1337 because this is an action arising under a statute (the RLA) regulating commerce or protecting trade and commerce against restraints.

## VENUE

6.     Venue is proper within the Southern District of New York pursuant to 28 U.S.C. § 1391(b) in that jurisdiction is not founded on diversity jurisdiction and it is a district where a substantial part of the events or omissions giving rise to the claim occurred, is a district where any Defendant to this action may be found, and/or is a district wherein Defendants are unincorporated labor associations and do business.

7.     The statutory predicates for the relief requested herein are contained in the RLA, 45 U.S.C. §§ 151-188.

## THE PARTIES

8.     AAWH is a holding company with two principal wholly owned operating subsidiaries, Plaintiff Atlas and Polar.  Atlas and Polar are commercial air carriers with national and international operations.  Atlas is the world's leading provider of ACMI (aircraft, crew,

maintenance, and insurance) freighter aircraft to major airlines around the globe. Polar is among

the world's leading providers of airport-to-airport freight carriage. Both carriers provide air

freight charter service for the United States Military Air Command. AAWH, Atlas, and Polar

are headquartered in Purchase New York. Atlas is a "common carrier by air" under which it

operates an airline system for the carriage by air of freight in domestic, overseas and foreign

commerce. As such, Atlas is a "carrier" as defined by Section 201 of the RLA, 45 U.S.C. § 181.

Operating through its two subsidiaries as a leading operator of freight aircraft, AAWH is an

integral part of interstate and foreign commerce, with nearly 2000 employees operating daily

departures to dozens of cities across four continents, as well as charter and contract services to

numerous locations where its clients do business.

9.     Defendant ALPA is an unincorporated labor organization, with its principal offices

in Washington, D.C. Defendant Atlas MEC is an unincorporated labor organization, with its

principal offices in Herndon, Virginia. ALPA is the certified collective bargaining representative

of the Atlas and Polar crewmembers under the RLA. The Atlas MEC is the local bargaining

representative for all Atlas crewmembers.

10.    Atlas and ALPA are parties to a collective bargaining agreement which became

effective on August 1, 2002 and becomes amendable on or about February 1, 2006 (the "Atlas

CBA"). Polar and ALPA are parties to a collective bargaining agreement which became

effective on December 1, 1999 and became amendable on May 31, 2003 (the "Polar CBA").

## FACTUAL BACKGROUND

### Dispute Between ALPA and Polar

11.    Pursuant to the RLA, Polar and ALPA have been engaged in negotiations for a new collective bargaining agreement since on or about February 24, 2002.  These negotiations have been conducted under the supervision of a federal mediator appointed by the National Mediation Board (the "NMB").  When the parties failed to reach an agreement by August 12, 2005, the NMB proferred binding arbitration.  ALPA declined the proffer and on or about August 16, 2005, the NMB released the parties from their negotiations.  Pursuant to the RLA, Polar and ALPA thereby entered what is known as a 30-day cooling off period.  Although the cooling off period was scheduled to expire at 12:01 a.m. on September 16, 2005, the parties agreed at that time not to resort to self-help as they continued to negotiate for an agreement.  ALPA terminated the negotiations at or about 2:15 a.m. on September 16, and commenced a strike against Polar.

12.    On or about September 16, 2005, the Atlas MEC issued a document entitled "Polar Struck Work Instructions."  In this document, the Atlas MEC instructed its crewmembers, among other things, "DO NOT CROSS A POLAR PICKET LINE."  The Struck Work Instructions were widely disseminated by the Atlas MEC to the Atlas crewmembers.

13.    In conjunction with the Atlas Collective Bargaining Agreement, Atlas and ALPA have negotiated a No Strike Agreement by means of a Letter of Agreement ("No Strike Agreement LOA").  The No Strike Agreement LOA states as follows:

> The Association, through its Atlas Air, Inc. MEC, agrees that during the term of the Agreement there will not be any complete or partial strikes, picketing, slowdowns, unfair labor practice strikes, refusals to cross picket lines, sympathy strikes, work stoppages, secondary boycotts, withholding of services in whole or in part, concerted refusal to work normal overtime, or other cessation of work or disturbances economic or otherwise unless and until the parties' rights to self-help mature under the Railway Labor

5

Act, provided, however, that nothing herein shall be construed to limit the Association's right to engage in otherwise lawful informational picketing. This paragraph shall not alter or limit the Company's right, if any, to obtain a court order enjoining such conduct by the Association and or the Crewmembers both collectively and individually. Nothing in this paragraph shall be construed, however, to limit the rights of the Association or the Atlas crewmembers to refuse to cross lawful strike picket lines established by or on behalf of pilots represented by any union lawfully certified or recognized pursuant to the Railway Labor Act.

14.   Prior to the Polar strike, on September 14, 2005, the chairman of the Atlas MEC, David Bourne ("Bourne"), held a conversation with a senior manager of AAWH regarding the Struck Work Instructions. Bourne agreed with the Company representative that under the No Strike Agreement LOA, the Atlas crewmembers could refrain only from physically crossing a picket line established by the Polar crewmembers. When the company manager stated that under the No Strike Agreement LOA the Atlas crewmembers would be required to come to work if Atlas could provide ingress and egress to its facilities that did not require the physical crossing of a picket line, Bourne did not disagree.

15.   For the first week of the strike called by the Polar crewmembers, the Atlas crewmembers reported for work and flew their trips so long as they could do so without physically crossing a picket line. The Company provided methods of ingress and egress to the Atlas crewmembers which allowed them to bypass any Polar picket lines that had been set up in many of the airports that Atlas serves, and the Atlas crewmembers flew their scheduled flights. As long as they were not required to physically cross a picket line, the Atlas crewmembers reported for work.

16.   On or about Friday, September 23, 2005, however, the Atlas pilots changed their established pattern of reporting for work if they were not required to physically cross a Polar picket line. In a message on the official Atlas MEC VARS communication hotline dated

September 23, the Atlas MEC, in conjunction with ALPA, instructed its members not to report

for assignments originating in Anchorage, Alaska, as well as assignments at the joint Polar-Atlas

training center in Miami, Florida. The Atlas MEC directed pilots to heed this instruction

whether or not reporting for work in either of these locations required them to physically cross a

Polar picket line. In fact, at both locations, Atlas has provided methods of ingress and egress to

Atlas crewmembers that do not require them to physically cross a Polar picket line and Atlas was

continuing to do so on September 23. Notwithstanding these arrangements by Atlas, and the No

Strike Agreement LOA, the Atlas MEC has directed its crewmembers to refuse assignments at

these two locations, and has threatened significant monetary fines on those who do not obey.

Atlas crewmembers have failed to report for duty in Anchorage and Miami beginning on

September 23. Most recently, the Atlas MEC, again in conjunction with ALPA, has further

directed its members not to report for duty in Fairbanks, Alaska, whether or not reporting for

duty required them to physically cross a Polar picket line.

17.     The dispute underlying the Defendants' activity against Plaintiffs, i.e., the

"sympathy strike," is subject to the jurisdiction of the System Board of Adjustment (the

"Adjustment Board") under the RLA. Indeed, the Atlas CBA contains a grievance and

arbitration process to resolve disputes like the instant one involving issues of contractual

interpretation including a process of submitting such disputes to the system board of adjustment.

Defendants' Activity Is Not Protected By Any Exception to the No Strike Clause

18.     The Atlas CBA allows the Atlas crewmembers to engage in a work stoppage in

sympathy to another crewmember group under one very limited circumstance: where Atlas

crewmembers would otherwise be required to cross a lawful picket line established by pilots

represented by a Union certified under the RLA. The sympathy strike instituted by the Atlas

MEC, in concert with ALPA, is not limited to circumstances where an Atlas crewmember would be required to cross a Polar picket line.  Thus, it violates the No Strike Agreement LOA.

19.    Any dispute over Plaintiffs' interpretation of the Atlas CBA, including the No Strike Agreement LOA, is subject to mandatory arbitration before the Adjustment Board.

Defendants' Unlawful Action Taken Against Plaintiffs Is
Causing Irreparable Injury to Plaintiffs and Their Customers

20.    Although a showing of irreparable injury is not required to obtain an injunction under the RLA, the Defendants' work stoppage at Atlas is causing – and will continue to cause if not enjoined – irreparable harm to Plaintiffs and their customers.

21.    The entire airline industry continues to face a bleak financial outlook.  Some prominent air carriers, such as United Air Lines, US Airways, Northwest Airlines and Delta Airlines have been forced to file for bankruptcy given the difficult post-September 11 economic situation.  Indeed, AAWH recently was forced to restructure its balance sheet via a chapter 11 process.  AAWH entered bankruptcy January 30, 2004 and emerged July 27, 2004.  Consequently, financial stability is of vital importance at this juncture.  Defendants' sympathy strike poses an imminent threat of increasing Plaintiffs' operating expenses and causing Atlas to lose revenues from resulting flight delays and cancellations.

22.    In the present financial climate for airlines, any increase in Atlas' expenses or decrease in revenues (due to lost customers or otherwise) threatens irreparable harm.  In today's environment, no airline, Plaintiffs included, can endure a prolonged work stoppage.

23.    In addition to the financial harm suffered by Plaintiffs, the Defendants' work stoppage is harming Plaintiffs' reputation and customer goodwill.  Plaintiffs' ability to maintain

its commitments to its customers has been greatly compromised by the actions of ALPA and the Atlas-MEC, and its customer relationships will be permanently damaged if the unlawful sympathy strike activity is not enjoined.

24. The Defendants' activity has caused and will continue to cause irreparable injury to the general public, contrary to the RLA's requirement that the parties maintain the status quo pending exhaustion of the statutes dispute resolution procedures. Atlas contracts with the United States military to provide airlift services, as well as maintenance service under the Civil Reserve Air Fleet ("CRAF") program. Atlas has been providing, and continues to provide long-range international cargo airlift services for the Department of Defense. A continued work stoppage by the Defendants will hamper Atlas' provision of these critical services. Furthermore, Defendants' actions will impede Atlas' provision of cargo services for the numerous major airlines with which it does business.

25. The imminent harm to Plaintiffs, their customers and the public at large posed by Defendants' sympathy strike and consequent work stoppages warrants immediate injunctive relief barring the Defendants from disrupting Atlas' operations until they have fully exhausted the RLA's dispute resolution procedures for a minor dispute such as this.

## COUNT I: DECLARATORY JUDGMENT THAT DEFENDANTS'

## STRIKE ACTIVITY AT ATLAS VIOLATES THE RLA

26. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-25, inclusive.

27. An actual controversy has arisen and now exists between Plaintiffs and the Defendants relating to their respective rights under the RLA. Under the facts as alleged herein,

there is a substantial controversy between Plaintiffs and the Defendants, who have adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory judgment. Defendants contend that they have the right to engage in a sympathy strike under the Atlas CBA. Plaintiffs contend that the sympathy strike instituted by ALPA and the Atlas MEC violates the Atlas CBA, and, specifically, the No Strike Letter of Agreement.

28.     The primary purpose of the RLA is to prevent unnecessary strikes, and the resulting interruptions to interstate commerce, in the rail and airline industries. *See, e.g., Detroit & T.S.L. R.R. v. United Transp. Union*, 396 U.S. 142, 148 (1969); *Texas & New Orleans R.R. v. Brotherhood of Ry. Clerks*, 281 U.S. 548, 565 (1930). The RLA achieves this goal by establishing an "elaborate machinery for negotiation, mediation, voluntary arbitration, and conciliation." *Detroit & T.S.L. R.R.*, 396 U.S. at 148-49. "The procedures of the [RLA] are purposely long and drawn out, based on the hope that reason and practical considerations will provide in time an agreement that resolves the dispute." *Id.* at 149 (quoting *Brotherhood of Ry. Clerks v. Florida E. C. Ry.*, 384 U.S. 238, 246 (1966)).

29.     In order to effectuate this purpose, Section 2, First of the RLA prohibits a union from striking – or exercising any other form of self-help such as a work stoppage – from the moment a union is certified until the parties have exhausted the elaborate negotiation and mediation mechanisms described above. *Brotherhood of Ry. Clerks v. Florida E. C. Ry.*, 384 U.S. 238, 244 (1966). This obligation under Section 2, First applies regardless of the nature of the dispute – whether the parties are engaged in a major dispute over negotiation of a new agreement (i.e., the obligation to "make and maintain" agreements), a minor dispute over interpretation or application of an existing agreement (i.e., the obligation to "settle all disputes . . . arising out of the application of such agreements"), or a dispute that does not

10

directly involve either the negotiation of a collective bargaining agreement or the interpretation of an existing agreement (i.e., the obligation to "settle *all* disputes, whether arising out of the application of such agreements *or otherwise*"). 45 U.S.C. § 152, First (emphasis added).

30.     Under the RLA, Plaintiffs' and Defendants' dispute over the meaning, interpretation or application of a collective bargaining agreement is a "minor dispute," subject to mandatory dispute resolution procedures. *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 722-23 (1945). Specifically, the dispute over the meaning of the No Strike Agreement LOA is a minor dispute which must be resolved by the System Board of Adjustment before an interruption to service is permissible. *Long Island R.R. v. International Ass'n of Machinists*, 874 F.2d 901 (2d Cir. 1989). Any work stoppage or other work interruption during the pendency of such adjustment board process is unlawful.

31.     Plaintiffs seek a judicial determination, pursuant to 28 U.S.C. § 2201, that Defendants' activity violates the RLA. Such a declaration is necessary and appropriate in order to set at rest the respective rights and obligations of the parties.

## COUNT II: INJUNCTIVE RELIEF UNDER THE RLA AGAINST DEFENDANTS' STRIKE ACTIVITY

32.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-31, inclusive.

33.     The Defendants' obligation under Section 2, First of the RLA to preserve the status quo is enforceable by injunction. *See Chicago & N. W. Ry. Co. v. Debtors Transp. Union*, 402 U.S. 570, 581–82 (1971); *Long Is. R.R. v. International Ass'n of Mach.*, 874 F.2d 901, 908-911 (2d Cir. 1989). Accordingly, the RLA's "immediate effect is to prevent the union from

striking and management from doing anything that would justify a strike." *Detroit & T. S. L. Ry. Co.*, 396 U.S. at 150.

34.     Under Section 2, First, it is irrelevant whether the individual employees have a right under the existing collective bargaining agreement to take the action or refuse the duty in question; the status quo must always apply. Until the RLA's dispute resolution procedures are completely exhausted, neither party may alter the " status quo" by engaging in economic self-help. *Consol. Rail Corp. v. Ry. Labor Executives Ass'n*, 491 U.S. 299, 303-04 (1989).

35.     The prohibition on economic self-help by a union applies not only to strikes, but to any alteration of the status quo that is designed to put economic pressure on the carrier. Accordingly, the federal courts have invoked this principle to enjoin slowdowns, *e.g.*, *Pan Am. World Airways v. Transp. Workers Union*, 117 L.R.R.M. (BNA) 3350, 3351 (E.D.N.Y. 1984); sickouts, *e.g.*, *Am. Airlines, Inc. v. Allied Pilots Assoc.*, 53 F. Supp. 2d 909 (N.D. Tex. 1999), *aff'd*, 228 F.3d 574 (5th Cir. 2000); work-to-rule programs, *e.g.*, *Long Island R.R. Co. v. Sys. Fed. No. 156*, 368 F.2d 50, 52 (2d Cir. 1966); increased write-ups of maintenance problems, *e.g.*, *Debtors Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, 243 F.3d 349, 363 (7th Cir. 2001); concerted refusals to work overtime, *e.g.*, *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300 (11th Cir. 2001); and concerted labor activity disruptive of an employer's normal transport operations, *Long. Is. R.R.*, 874 F.2d at 911.

36.     The collective bargaining agreement governing the Atlas pilots contains an explicit "no strike" provision. It is a well-settled proposition that the RLA prohibits the Defendants from engaging in any form of self-help, including a slowdown or work stoppage, in the current situation. *See Long Island R.R.,* 874 F.2d 901 (2d Cir. 1989). Defendants may not

engage in a sympathy strike until their right to do so is submitted to and decided by the System Board of Adjustment.

37.     The Defendants' sympathy activity at Atlas to support ALPA's on-going labor dispute with Polar justifies imposition of injunctive relief.  The Defendants' activity is damaging to Plaintiffs' financial condition, their customers and the general public.

38.     No showing of irreparable injury is required to obtain an injunction against an unlawful violation of the status quo obligations under the RLA.  *Consolidated Rail Corp. v. Railway Labor Executives*, 491 U.S. 299, 303 (1989); *Detroit & T.S.L.R. Co. v. United Transportation Union*, 396 U.S. 142 (1969).  Nonetheless, Plaintiffs will suffer irreparable injury as a result of the Defendants' threatened, imminent unlawful activity.  Among other things, Plaintiffs will suffer financial injuries that would jeopardize their ability to continue operating, and, if they are forced to endure an indefinite sympathy strike, and the erratic and unreliable flight operation caused by a sympathy strike, Plaintiffs will suffer permanent and irreparable injury to their relationship with their customers.  The public at large will also suffer great inconvenience, as Atlas will be hampered in its capacity to provide airlift assistance to the U.S. Military.

39.     In addition, Plaintiffs have no adequate remedy in a civil action at law because any delay in obtaining relief by way of a civil action will result in serious and irreparable damage to Plaintiffs' financial condition and its relationship with their customers before such legal relief could be obtained.  Moreover, the injuries suffered by Plaintiffs could not be fully remedied in the form of money damages.  A temporary restraining order is therefore necessary in order to restore the status quo, and prevent the irreparable damage caused by the Defendants' work stoppage.

40.     As to each item of relief sought, greater injury will be inflicted on the public and upon Plaintiffs if such relief is denied than will be inflicted upon the Defendants by the granting of the relief sought.

41.     Based on the foregoing, Plaintiffs seek an injunction under the RLA enjoining and prohibiting the Defendants, and anyone acting in concert with them, from engaging in any type of sympathy strike or other similar self-help.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Issue a Temporary Restraining Order and Preliminary Injunction, to be made permanent on final hearing, restraining and enjoining the Defendants and all persons and organizations acting in concert therewith, from calling, permitting, instigating, authorizing, encouraging, participating in, approving or continuing self-help of any kind, including, but not limited to, any strike, sympathy strike, slowdown, work stoppages, withholding of services in whole or in part, other concerted refusal to perform normal employment duties, other cessation of work or disturbances economic or otherwise, or any other form of self-help, unless and until the Defendants have exhausted the dispute resolution procedures set forth in the RLA, including submitting this dispute to binding arbitration before the System Board of Adjustment;

2.     Issue a Temporary Restraining Order and Preliminary Injunction, to be made permanent on final hearing, ordering the Defendants to take all reasonable steps within their power to prevent the aforesaid actions, including but not limited to the following:

(a)     Instructing all ALPA-represented Crewmembers employed by Atlas to resume their normal working schedule and habits, and providing Plaintiff and Atlas a copy of all such instructions;

14

(b)     Notifying, by the most expeditious means possible, all ALPA-represented Crewmembers employed by Atlas of the issuance, contents and meaning of the Temporary Restraining Order and Preliminary Injunction, and producing a copy of all such messages to Plaintiffs;

(c)     Including in such notice a directive from the Defendants to those Atlas Crewmembers who are engaging in a work stoppage or other concerted refusals to conduct operations in the normal manner to cease and desist all such activity and to cease and desist all exhortations or communications encouraging the same upon pain of fine, suspension, or other sanction by the Defendants;

(d)     Posting the notice described above on the Defendants' Internet web sites, and providing a copy of the notice to Plaintiffs;

(e)     Including such notice on all recorded telephone hotlines under control of the Defendants and providing a copy of all messages to Plaintiffs; and

(f)     Reporting to Plaintiffs and the Court, at a date and time to be determined by the Court, by sworn affidavit, the methods used to affect the notices described above to all Atlas Crewmembers represented by Defendants.

3.     Declare that calling, permitting, instigating, authorizing, encouraging, participating in, approving or continuing self help of any kind, including, but not limited to, any strike, sympathy strike, slowdown, withholding of services in whole or in part, or other concerted refusal to perform normal employment duties, or other cessation of work or disturbances economic or otherwise is a violation of the RLA;

4.     Awarding damages against the Defendants for the harm caused to Plaintiffs by the Defendants' unlawful activity; and

15

5.      Such other and further relief, including costs and attorneys' fees, as the Court

deems proper.

Date:   September 25, 2005          Respectfully submitted,

                                    O'MELVENY & MYERS LLP

                                    By:_____
                                        Jeffrey I. Kohn (JK 3219)
                                        Jessica Kastin (JK 2288)
                                        Raquel Millman (RM 2133)

                                    Times Square Tower
                                    7 Times Square
                                    New York, New York 10036
                                    (212) 326-2000

                                    *Counsel for the Plaintiffs Atlas Air Worldwide*
                                    *Holdings, Inc. and Atlas Air, Inc.*

Of Counsel:
        Robert A. Siegel

1602988

16